No. 17-30248

_____

## UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

v.

**JOHNNY ELLERY SMITH,**

**Defendant-Appellant.**

_____

Appeal from the United States District Court

for the District of Oregon

Portland Division

_____

## OPENING BRIEF OF APPELLANT

_____

**Conor Huseby**
**Assistant Federal Public Defender**
**101 SW Main Street, Suite 1700**
**Portland, Oregon 97204**
**(503) 326-2123**

**Attorney for Defendant-Appellant**

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................ iii

Statement of Jurisdiction........................................................................................ 1

Statement of Issue .................................................................................................. 2

Statement of the Case............................................................................................. 3

    Nature of the Case.............................................................................................. 3

    Relevant Factual and Procedural History ......................................................... 3

    Custody Status................................................................................................... 5

Summary of Argument ........................................................................................... 5

Standard of Review................................................................................................. 7

Argument................................................................................................................. 7

   I. The Major Crimes Act Identifies the Only State Law Crimes Committed by Tribal Members in Indian Country for Which Federal Courts Have Jurisdiction, Which Precludes the Prosecution of Mr. Smith for a Non-Major Crime................................................................................................. 7

   II. The Assimilative Crimes Act Does Not Apply Because the Warm Springs Reservation was Not "Acquired for the Use of the United States" and is Not "Under the Exclusive or Concurrent Jurisdiction" of the United States ............................................................................................. 11

        a. The Plain Language of the Assimilative Crimes Act and the Indian Country Crimes Act Indicates the Assimilative Crimes Act Does Not Apply to Indian Country ............................................. 12

        b. Even if the Assimilative Crimes Act Were Ambiguous on its Face, Congressional Intent Indicates Congress Never Intended to Give States Legislative Authority Over Crimes Committed by Native Americans in Indian Country ................................................. 15

i

c. The District Court Failed to Apply the "Expressio Unius Est Exclusio Alterius" Rule of Construction Approved by the Supreme Court ....................................................................... 19

d. The District Court Erroneously Relied on Precedent That Does Not Control the Issues in This Case ................................................. 22

III. Even Assuming the Assimilative Crimes Act Applies to Indian Country, the Act Did Not Apply in This Case Because There was no "Gap-Filling" Role for the Act to Play ........................................................ 26

Conclusion ........................................................................................ 27

Statement of Related Cases ................................................................ 28

Certificate of Service ........................................................................ 29

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Sandoval,*
   532 U.S. 275 (2001) ...................................................................25

*Bond v. United States,*
   134 S. Ct. 2077 (2014) ............................................................ 9-11

*Bryan v. Itasca County Minnesota,*
   426 U.S. 373 (1976) ................................................................. 18

*Coeur D'Alene Tribe of Idaho v. Hammond,*
   384 F.3d 674 (9th Cir. 2004) ................................................. 13-15

*Dean v. United States,*
   137 S. Ct. 1170 (2017) ......................................................... 20, 21

*Duro v. Reina,*
   U.S. 676 (1990).........................................................................5, 9

*Gregory v. Ashcroft,*
   501 U.S. 452 (1991).....................................................................10

*Hagans v. Lavine,*
   415 U.S. 528 (1974).....................................................................24

*Honeycutt v. United States,*
   137 S. Ct. 1626 (2017) ................................................................21

*Kimbrough v. United States,*
   552 U.S. 85 (2007).......................................................................21

*Lewis v. United States,*
   523 U.S. 155 (1998) ................................................................ 8, 16

*McClanahan v. Ariz. State Tax Comm'n,*
   411 U.S. 164 (1973) ....................................................................19

iii

*Pueblo of Santa Ana v. Hodel*,
   663 F.Supp. 1300 (D. D.C. 1987) ........................................................ 19, 22, 24

*Talton v. Mayes*,
   163 U.S. 378 (1896) ........................................................................... 9

*Texas v. Cobb,*
   532 U.S. 162 (2001)........................................................................... 25

*United States v. Bass,*
   404 U.S. 336 (1971)........................................................................... 10, 11

*United States v. Bendtzen*,
   542 F.3d 722 (9th Cir. 2008) ............................................................ 14

*United States v. Joyce,*
   357 F.3d 921 (9th Cir. 2004) ............................................................ 24

*United States v. Lara*,
   541 U.S. 193 (2004) ........................................................................... 17

*United States v. Marcyes*,
   557 F.2d 1361 (9th Cir. 1977) .......................................................... 22, 26

*United States v. Mariea,*
   795 F.2d 1094 (1st Cir. 1986)........................................................... 7, 26

*United States v. Morrison,*
   529 U.S. 598 (2000)........................................................................... 11

*United States v. Press Pub. Co.*,
   219 U.S. 1 (1911) .............................................................................. 16, 26

*United States v. Quiver*,
   241 U.S. 602 (1916) .......................................................................... 19

*United States v. Rosa-Ortiz,*
   348 F.3d 33 (1st Cir. 2003)................................................................ 3

*United States v. Sosseur,*
    181 F.2d 873 (7th Cir. 1959) ............................................................ 22

*United States v. Walczak,*
    783 F.2d 852 (9th Cir. 1986) ............................................................ 7

*Webster v. Fall,*
    266 U.S. 507 (1925) ............................................................................ 24

*Williams v. United States,*
    327 U.S. 711 (1946) ..................................................................... 22-24

*Worcester v. State of Ga.,*
31 U.S. 515 (1832) ............................................................................ 19

**Statutes**

18 U.S.C. § 7 ............................................................................................ 13

18 U.S.C. § 13 ................................................................................... *passim*

18 U.S.C. § 924(c) .................................................................................. 20

18 U.S.C. § 1028A .................................................................................. 20

18 U.S.C. § 1152 ................................................................................ *passim*

18 U.S.C. § 1153 ...................................................................................... 18

18 U.S.C. § 1162 ...................................................................................... 17

18 U.S.C. § 3231 ........................................................................................ 1

28 U.S.C. § 1291 ........................................................................................ 1

Federal Rules of Criminal Procedure 12(b)(3)(B) ................................... 3

Or. Rev. Stat. § 811.540(1) .............................................................. 2-4, 26

**Other**

Act of Oct. 28, 1991, PL 102-137, 105 Stat. 646 ...................................................17

Barbara L. Creel, *The Right To Counsel for Indians Accused of Crime: A Tribal and Congressional Imperative*,
  18 Mich. J. Race & L. 317, 318 n. 1 (2013) ...................................................... 2

Hon. William C. Canby, Jr., *American Indian Law in a Nutshell*,
  (6th ed. 2014) ............................................................................................... 17

The Indian Gaming Regulatory Act,
  PL 100-497, 102 Stat 2467 ............................................................................ 17

Tribal Law and Order Act, PL 111-211 ................................................................. 17

Violence Against Women Reauthorization Act of 2013,
  sec. 904, § 204, 127 Stat. at 120 .................................................................. 18

Warm Springs Tribal Code § 310.520 ............................................................. 4, 26

# STATEMENT OF JURISDICTION

The district court's lack of jurisdiction is the sole issue raised in this appeal. Jurisdiction over federal crimes is conferred on the district court by 18 U.S.C. § 3231. The district court entered judgment on December 1, 2017. ER 69. Mr. Smith timely filed his notice of appeal on December 5, 2017. ER 68. This Court has jurisdiction to review the district court's assertion of jurisdiction and final judgement imposing sentence pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUE

Johnny Smith, an enrolled member of the Confederated Tribes of Warm Springs, fled from tribal police on two occasions while driving a car on the Warm Springs Indian Reservation. Although eluding the police is not listed in the federal Major Crimes Act as an offense punishable in federal court when committed within Indian country, the government prosecuted Mr. Smith for a violation of the state offense, Or. Rev. Stat. § 811.540(1), through the Assimilative Crimes Act. The questions presented are:

I. In the absence of jurisdiction conferred by the Major Crimes Act, does the government's prosecution of an Indian for violation of state law in Indian country violate federal statutes and tribal sovereignty?

II. If the Assimilative Crimes Act applies to tribal members in Indian country, does the federal government exceed its authority by charging an Indian with eluding the police in violation of state law when there already exists a tribal code and justice system that criminalizes and punishes the same conduct?[1]

---

[1] The term "Indian" is used because "it has become a term of art from historical use in Federal Indian law, history, and statutes." Barbara L. Creel, *The Right To Counsel for Indians Accused of Crime: A Tribal and Congressional Imperative*, 18 Mich. J. Race & L. 317, 318 n. 1 (2013).

## STATEMENT OF THE CASE

**Nature of the Case**

This is a direct appeal from the judgment of the district court entered on December 1, 2017, by the Honorable Anna J. Brown, United States District Judge for the District of Oregon, convicting Johnny Smith of two counts of fleeing or attempting to elude a police officer in violation of Or. Rev. Stat. § 811.540(1). ER 69. The conviction was based upon Mr. Smith's guilty plea on August 16, 2017, in which he expressly reserved his claim that the federal government lacked jurisdiction to prosecute him for the state crimes under the Assimilative Crimes Act. ER 14, ER 76-82; *see United States v. Rosa-Ortiz,* 348 F.3d 33 (1st Cir. 2003) (under Federal Rule of Criminal Procedure 12(b)(3)(B), "jurisdictional challenges to an indictment may be raised at any time . . . including for the first time on appeal.").

**Relevant Factual and Procedural History**

The jurisdictional issue raised on appeal involves simple facts applied to the statutory framework for federal court jurisdiction. Johnny Smith is an enrolled member of the Confederated Tribes of Warm Springs. On November 1, 2016, a federal grand jury indicted Mr. Smith for two counts of fleeing or attempting to elude tribal police on the Warm Springs Reservation. ER 156. Specifically, the indictment charged Mr. Smith with violating Or. Rev. Stat. § 811.540(1), through the Assimilative Crimes

Act (18 U.S.C. § 13) and the Indian Country Crimes Act (18 U.S.C. § 1152). *Id*. The

Oregon state statute makes it a crime for the driver of a motor vehicle to elude the

police after being given a visual or audible signal to stop.[2] A Warm Springs tribal code

provision punishes the same conduct.[3] There is no federal law prohibiting eluding the

police, and eluding the police is not a crime listed for assimilation under the Major

Crimes Act.

Mr. Smith filed a motion to dismiss the indictment for lack of jurisdiction on

May 23, 2017. ER 136-155. After further pleadings, the district court held a hearing

regarding the motion on August 10, 2017. ER 37-67. The district court denied the

motion by written Opinion and Order on August 15, 2017. ER 85-101. Mr. Smith then

entered a guilty plea on August 16, 2017, stating his intention to appeal the district

---

[2] Or. Rev. Stat. § 811.540(1) states that a "person commits the crime of fleeing or attempting to flee a police officer if: (a) The person is operating a motor vehicle, and (b) A police officer who is in uniform and prominently displaying a badge of office or operating a vehicle appropriately marked showing it to be an official police vehicle gives a visual or audible signal to bring the vehicle to a stop, including any signal by hand, voice, emergency light or siren, and . . . [t]he person, while still in the vehicle, knowingly flees or attempts to elude a pursuing officer . . ."

[3] Warm Springs Tribal Code § 310.520 states that a "driver of a motor vehicle commits the crime of fleeing or attempting to elude a police officer if, when given visual or audible signal to bring the vehicle to a stop, he knowingly flees or attempts to elude a pursuing police officer. The signal given by the police officer may be by hand, voice, emergency light or siren."

court's jurisdictional holding orally and in writing. ER 14, 76-82. On November 30, 2017, the district court sentenced Mr. Smith to 19 months and 1 day imprisonment, followed by a three-year term of supervised release. ER 70.

**Custody Status**

Mr. Smith is in the custody of the Bureau of Prisons, serving the sentence imposed in this case at FCI Sheridan, with a projected release date of July 4, 2018.

## SUMMARY OF ARGUMENT

Mr. Smith is a member of an Indian tribe that retains those aspects of sovereignty that are "needed to control [its] own internal relations," which includes the right to "prescribe and enforce rules of conduct for its own members[.]" *Duro v. Reina,* 495 U.S. 676, 685-686 (1990). Because federally recognized tribes have not been divested of the authority to promulgate laws and to punish criminal offenses committed by tribal members, federal statutes which purport to intrude into tribal sovereignty must be construed narrowly. The Major Crimes Act specifically and clearly lists the *major* crimes committed by tribal members in Indian county that may be the subject of federal prosecution through assimilation of state law crimes. By expressly listing certain major crimes for federal jurisdiction through assimilation, Congress demonstrated an intent to occupy the field and, by necessary implication, foreclosed federal prosecution of tribal members for non-major state law crimes committed in Indian country. Eluding

the police is not one of the crimes listed in the Major Crimes Act. Therefore, the district court lacked federal jurisdiction over the indictment charging Mr. Smith with the state crime of eluding the police.

Even if the Major Crimes Act did not preclude prosecution of non-major state law crimes by occupying the field, the district court's assumption of jurisdiction under the Assimilative Crimes Act was still in error because the Assimilative Crimes Act does not apply to Indian country. The Assimilative Crimes Act applies only to certain, carefully delineated "places," and an Indian reservation is not included therein. The legislative history of the Assimilative Crimes Act and a related provision, the Indian Country Crimes Act, confirms what is apparent from the statute's text—that Congress intended to apply the Assimilative Crimes Act only to federal enclaves in which no other sovereign had jurisdiction to punish offenses. Congress demonstrated in the Major Crimes Act that it knew well how to subject reservation lands to the full sweep of state laws, but the Assimilative Crimes Act reflects no such intent. Because the Confederated Tribes of Warm Springs is a sovereign entity with jurisdiction to punish offenses committed by its members on tribal lands, including eluding the police, the federal court lacked jurisdiction over the offense through the Assimilative Crimes Act.

Even if the Assimilative Crimes Act could be construed to apply to Indian country, it would not apply in this case because there is no "gap-filling" role for the

Act to play. Because Mr. Smith could have been prosecuted for the same conduct in tribal court, there was no risk in this case that Mr. Smith could elude the police "with impunity on [a] federal enclave[] simply by crossing jurisdictional lines." *United States v. Mariea,* 795 F.2d 1094, 1099 (1st Cir. 1986). The federal government had no basis upon which to charge Mr. Smith with a minor state law violation in federal court through the Assimilative Crimes Act.

## STANDARD OF REVIEW

A district court's jurisdiction over a criminal offense is a question of law that is reviewed *de novo. United States v. Walczak,* 783 F.2d 852, 854 (9th Cir. 1986).

## ARGUMENT

**I.    THE MAJOR CRIMES ACT IDENTIFIES THE ONLY STATE LAW CRIMES COMMITTED BY TRIBAL MEMBERS IN INDIAN COUNTRY FOR WHICH FEDERAL COURTS HAVE JURISDICTION, WHICH PRECLUDES THE PROSECUTION OF MR. SMITH FOR A NON-MAJOR CRIME.**

There already exists a specific statute governing federal jurisdiction over state law crimes committed in Indian country and it does not include the crime of eluding the police. The Major Crimes Act provides federal court jurisdiction over fifteen specifically enumerated *major* crimes when committed by an Indian in Indian country. None of the enumerated crimes cover any conduct remotely similar to eluding the

police.[4] To allow the federal government to prosecute any minor crime it wishes through the Assimilative Crimes Act, would render the Major Crimes Act meaningless and violate tribal sovereignty.

In *Lewis v. United States*, the Supreme Court held that assimilation under the Assimilative Crimes Act is not proper where "federal statutes reveal an intent to occupy so much of the field as would exclude the use of the particular state statute at issue," where "its application would interfere with the achievement of federal policy," or where state law has been "displaced by specific laws enacted by Congress." 523 U.S. 155, 164-165 (1998). The Major Crimes Act meets two of these standards.

First, the Major Crimes Act is a federal statute which occupies the field of federal court jurisdiction over Indian country violations of state laws.  With the Major Crimes Act, Congress passed a very specific statute defining when the federal government has authority to assimilate state law crimes committed by tribal members in Indian country. That statute excludes from assimilation victimless minor crimes like eluding the police. If the government could simply assimilate any state law crime for prosecution of tribal

---

[4] The major crimes which are subject to assimilation pursuant to the MCA are murder, manslaughter, kidnapping, maiming, felony sex crimes described in chapter 109A, incest, felony assaults described in section 113, an assault against an individual who has not attained the age of 16 years, felony child abuse or neglect, arson, burglary, robbery, and felony thefts described section 661.

members in Indian country, the Major Crimes Act, with its exclusive and specific list of crimes eligible for assimilation, would be a dead letter.

Tribal criminal jurisdiction over tribal members, as an aspect of tribal sovereignty, predates the Constitution and does not depend upon it. *Talton v. Mayes*, 163 U.S. 378, 383–84 (1896). Federally recognized tribes continue to retain those aspects of sovereignty that are "needed to control their own internal relations, and to preserve their own unique customs and social order." *Duro*, 495 U.S. at 685–86. "The power of a tribe to prescribe and enforce rules of conduct for its own members does not fall within that part of sovereignty which the Indian implicitly lost by virtue of their dependent status." *Id*. at 686 (citations and internal quotation marks omitted).

In *Bond v. United States*, 134 S. Ct. 2077 (2014), the Court applied the clear statement rule to curb federal jurisdiction over matters properly relegated to local law enforcement. *Bond* involved a federal prosecution under the chemical weapons treaty of an unhappy wife who placed a caustic substance in a location where it was likely to be touched by her husband's lover. *Id.* at 2833. As in the present case, the offense was fully capable of being prosecuted by local authorities, and Congress had not clearly stated an intention for federal prosecutors to intrude into a traditional area of local authority. The Court narrowly construed the federal chemical weapons to foreclose the federal prosecution in light of the federal government's limited role in local law

enforcement: "[W]e will not be quick to assume that Congress has meant to effect a significant change in the sensitive relation between federal and state criminal jurisdiction." *Id*. The Court relied on the "well-established principle that 'it is incumbent upon the federal courts to be certain of Congress' intent before finding that federal law overrides the 'usual constitutional balance of federal and state powers.'" *Id.* at 2089 (citing *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991)).

Although *Bond* addressed the relationship between federal and state powers, the same principle applies where the balance is between federal and tribal powers. As with states, the federal government's relationship to Indian tribes is firmly rooted in the Constitution: "[A]s explained by Justice Marshall, when legislation 'affect[s] the federal balance, the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision.'" *Id*. (quoting *United States v. Bass*, 404 U.S. 336, 349 (1971)). Just as an expansive reading of the statute at issue in *Bond* would have changed the "sensitive relation" between state and federal law enforcement, the government's boundless reading of the Assimilative Crimes Act to incorporate all state law crimes into Indian country for potential federal prosecution would radically upset the sensitive relationship between tribes and the federal government regarding federal criminal jurisdiction in Indian country. As in *Bond*, construing the Assimilative Crimes Act to

expand federal jurisdiction into areas typically reserved to tribal sovereignty must be rejected absent language clearly and expressly conveying that intent. *Id*. at 2089-90 (citing *Bass, Jones v. United States*, 529 U.S. 848, 850 (2000), and *United States v. Morrison*, 529 U.S. 598, 618(2000)). The Major Crimes Act includes such a clear statement, but the Assimilative Crimes Act does not. In the absence of a clear statement from Congress, this Court should reject the government's intrusion on tribal sovereignty.

II.   **THE ASSIMILATIVE CRIMES ACT DOES NOT APPLY BECAUSE THE WARM SPRINGS RESERVATION WAS NOT "ACQUIRED FOR THE USE OF THE UNITED STATES" AND IS NOT "UNDER THE EXCLUSIVE OR CONCURRENT JURISDICTION" OF THE UNITED STATES.**

Even if the Major Crimes Act did not serve as the exclusive statute by which the government may assimilate state crimes for federal prosecution against Native Americans in Indian country, the text and legislative history of the Assimilative Crimes Act indicate the Act cannot serve as a basis for prosecuting tribal members accused of crimes committed in Indian Country.

a. **The Plain Language of the Assimilative Crimes Act and the Indian Country Crimes Act Indicates the Assimilative Crimes Act Does Not Apply to Indian Country.**

In order for the Assimilative Crimes Act to apply state law definitions of crimes to Native American defendants, state law must go through two levels of incorporation. First, state criminal law is assimilated into federal enclave law via the Assimilative Crimes Act:

> Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, or on, above, or below any portion of the territorial sea of the United States not within the jurisdiction of any State, Commonwealth, territory, possession, or district is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13 (1948). Next, federal enclave law is applied to Indian Country through the Indian Country Crimes Act:

> Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.

> This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

18 U.S.C. § 1152 (1948).

18 U.S.C. § 7 is the provision defining which "places" the Assimilative Crimes Act applies to. The Assimilative Crimes Act does not apply to Indian country on its face, as the only area referred to in § 7 that could possibly include Indian lands—"[a]ny lands reserved or acquired for the use of the United States, and the under the exclusive or concurrent jurisdiction thereof"—does not apply because tribal lands were not "acquired for the use of the United States." 18 U.S.C. § 7(3) (1948); *see, e.g.* Treaty between the United States and the Confederated Tribes and Band of Indians in Middle Oregon, art. 1, Mar. 8, 1859, 12 Stat. 963 (ceding certain lands to the United States while reserving lands for "exclusive use" by tribes); Treaty between the United States and the Walla-Walla, Cayuses, and Umatilla Tribes and Bands of Indians in Washington and Oregon Territories, art. 1, Mar. 8, 1859, 12 Stat. 945 (same). Section 7 has a long list of places that fall under the "special maritime and territorial jurisdiction of the United States," including the high seas, vessels voyaging upon the Great Lakes, islands containing guano deposits, and aircraft. It would be an unwarranted leap to presume that Congress meant to include Indian country by implication after providing an exhaustive list of areas to which federal enclave law directly applies. *Coeur D'Alene Tribe of Idaho v. Hammond*, 384 F.3d 674, 695 (9th Cir. 2004) (describing the assertion

that Congress intended "United States military and other reservations" to apply to Indian reservations without stating so as an unjustified "leap").

Regardless, if federal enclave crimes extend to Indian country of their own force, the Indian Country Crimes Act provision extending federal enclave crimes to Indian country would be mere surplusage, and the provision providing exceptions to the application of federal enclave law would be the only portion of the Act that has any meaningful effect. *See United States v. Bendtzen*, 542 F.3d 722, 727 (9th Cir. 2008) (citations omitted) ("It is a well-established principle of statutory construction that 'legislative enactments should not be construed to render their provisions mere surplusage.'").

This Court's opinion in *Coeur D'Alene Tribe of Idaho v. Hammond* forecloses any argument that the Assimilative Crimes Act applies on its face to Indian country. In *Coeur D'Alene,* the government argued that a statute that allowed states to impose taxes on gasoline sold on "United States military or other reservations" allowed the State of Idaho to tax gasoline sales on Indian reservations. *Coeur D'Alene,* 384 F.3d at 693. The language "other reservations," is broader than the language in § 7 describing "lands reserved or acquired for the use of the United States." Yet, this Court held that the gasoline tax statute did not apply to Indian reservations, concluding that it would be a "leap" to conclude that Congress meant "'United States military or other reservations'

to apply to Indian reservations without stating so specifically[.]" *Id.* at 695. In this case, it is not simply taxes that are at issue. Rather, at issue is a Tribe's sovereign prerogative regarding the decision of when to strip one of its own members of his or her freedom, and for how long. The Court should be even more reticent to intrude upon tribal sovereignty in the criminal context than in *Coeur D'Alene.*

In sum, because an Indian reservation does not meet the definition of "[a]ny lands reserved or acquired for the use of the United States, and the under the exclusive or concurrent jurisdiction thereof," the Assimilative Crimes Act does not apply to Indian country.

> **b. Even if the Assimilative Crimes Act Were Ambiguous on its Face, Congressional Intent Indicates Congress Never Intended to Give States Legislative Authority Over Crimes Committed by Native Americans in Indian Country.**

Analysis of Congressional intent indicates the Assimilative Crimes Act should not be applied to allow the federal government to prosecute state law crimes committed by Native American defendants in Indian country. Congress passed the original Assimilative Crimes Act out of concern that minor crimes committed in federal enclaves, such as dockyards or forts, were going unpunished because (1) the federal criminal code only covered a few major crimes, and (2) *no other sovereign had any jurisdiction to punish offenses in those areas*. 40 Annals of Cong. 929 (1823); 41 Annals of Cong. 528 (1824). By its text, the original Act only applied to "any fort,

dock-yard, navy-yard, arsenal, armory, or magazine, the site whereof is ceded to, and under the jurisdiction of, the United States, or on the site of any lighthouse, or other needful building belonging to the United States."[5] Act of Mar. 3, 1825, ch. 65, § 1, 4 Stat. 115. Within these forts and military installments there existed a need to fill the gaps in the law so as not to create lawless enclaves where a wide swath of minor crimes would escape punishment altogether. *See Lewis*, 523 U.S. at 160–61.[6]

There is no need to "fill the gaps" in criminal jurisdiction over tribal members in Indian country. Judge Canby aptly summarized the absence of a "gap" in criminal jurisdiction for Indian defendants:

> The Indian who commits a crime in Indian country is subject to the comprehensive criminal jurisdiction of the tribe and, for a few specified crimes, of the federal government under the Major Crimes Act. There is no criminal law vacuum for the Indian (as there was for the non-Indian) and therefore no need to import a body of criminal law by way of the General Crimes Act and Assimilative Crimes Act. To do so merely

---

[5] At its next reenactment, the Act simply referred to "any place which has been, or shall hereafter be, ceded to, and under the jurisdiction of the United States." Act of Apr. 5, 1866, ch. 24, § 2, 14 Stat. 12. In the following reenactment, the Act covered "any place, jurisdiction over which has been retained by the United States or ceded to it by a State, or which has been purchased with the consent of a State for the erection of a fort, magazine, arsenal, dockyard, or other needful building or structure." Act of July 7, 1898, ch. 576, § 2, 30 Stat. 717.

[6] The drafters of the Assimilative Crimes Act justified the application of state law by the fact that those living in federal enclaves who occupied the land before it was ceded "would not view it as any hardship that the great class of minor offenses should continue to be punished in the same manner as they had been before the cession." *United States v. Press Pub. Co.*, 219 U.S. 1, 12–13 (1911).

displaces tribal law that is far more appropriate for governing the conduct
of the Indian.

Hon. William C. Canby, Jr., *American Indian Law in a Nutshell* (6th ed. 2014)
[hereinafter Canby] at 176 ("The primary need filled by the [ICCA] was that of a body
of law to punish non-Indian crime."); *see also United States v. Lara*, 541 U.S. 193,
204–05 (2004) (recognizing that tribes have continued to possess inherent sovereign
power to exercise criminal jurisdiction over tribal members, subject only to
Congressional restriction or expansion).

Furthermore, when Congress has determined that a gap in law enforcement on
Indian reservations exists, Congress has passed legislation expressly modifying
criminal jurisdiction in Indian country rather than assuming that the Assimilative
Crimes Act fills any gaps. *See, e.g.,* Public Law 280, 67 Stat. 588, PL 83-280, *codified
at* 18 U.S. § 1162 (1953) (transferring Federal criminal jurisdiction on Indian Lands to
certain State governments); The Indian Gaming Regulatory Act, PL 100-497, 102 Stat
2467 (expressly assimilating state gambling offenses into federal law and applying
them to Indian country); Act of Oct. 28, 1991, PL 102-137, 105 Stat. 646 (the so-called
"*Duro* fix"—expanding tribal jurisdiction to include Indian members of another tribe);
Tribal Law and Order Act, PL 111-211 (expanding tribal court jurisdiction to permit
lengthier tribal sentences); Violence Against Women Reauthorization Act of 2013, sec.

904, § 204, 127 Stat. at 120 (granting tribal courts jurisdiction over certain domestic violence crimes committed by non-Indians).

Further evidence of Congress' intent not to apply the Assimilative Crime Act to Indian country comes from the reenactment of Major Crimes Act, passed alongside the 1948 reenactment of the Indian Country Crimes Act and Assimilative Crimes Act. 18 U.S.C. § 1153 (1948) (providing that "the offenses of burglary and rape shall be defined and punished in accordance with the laws of the State in which such offenses were committed"). The reenactment of the Major Crimes Act alongside the Assimilative Crimes Act and Indian Country Crimes Act in 1948 indicates that "Congress knew well how to express its intent directly when that intent was to subject reservation Indians to the full sweep of state laws." *Bryan v. Itasca County Minnesota*, 426 U.S. 373, 389 (1976). It is also telling that, while Congress reenacted the Major Crimes Act, Indian Country Crimes Act, and Assimilative Crimes Act at the same time, in the legislative history, Congress never mentioned applying state law to the tribes via double derivative incorporation through the Indian Country Crimes Act and Assimilative Crimes Act, nor did it expressly include language to that effect.

Finally, Congress clearly would not have intended to apply the Assimilative Crimes Act to Indian country by way of the Indian Country Crimes Act because the prevailing federal policy at the time of its original passage involved insulating tribes

from state interference. *See Worcester v. State of Ga.*, 31 U.S. 515, 561 (1832)(reinforcing the right of tribes to be free from State inference while affirming the exclusive right of the federal government to regulate relations between tribes and outsiders); Canby, *supra* at 155 ("For fifty years, Marshall's view [in *Worcester*] that state law and power could not intrude into Indian country held sway."); *see also McClanahan v. Ariz. State Tax Comm'n*, 411 U.S. 164, 168 (1973) ("The policy of leaving Indians free from state jurisdiction and control is deeply rooted in the nation's history."); *Pueblo of Santa Ana v. Hodel*, 663 F.Supp. 1300, 1310 (D. D.C. 1987) ("The long-standing policy which insulated the Indians from state control, is patently incompatible with the proposition that Congress intended to utilize the ACA to enforce state criminal laws on Indian lands."); *United States v. Quiver*, 241 U.S. 602, 605–06 (1916)("[T]he relations of the Indians, among themselves—the conduct of one toward another—is to be controlled by the customs and laws of the tribe, save when Congress expressly or clearly directs otherwise.").

### c. The District Court Failed to Apply the "Expressio Unius Est Exclusio Alterius" Rule of Construction Approved by the Supreme Court.

Two recent United States Supreme Court cases demonstrate that, where Congress demonstrates an ability to clearly express its intent in a particular arena of the law, courts should not expansively read congressional intent in the absence of unambiguously clear language. In *Dean v. United States,* 137 S. Ct. 1170 (2017), the

government argued that a judge was restricted under 18 U.S.C. § 924(c) from considering an imposed mandatory minimum sentence in deciding how much time to impose on the non-mandatory sentences on other charges under the Guidelines. The Court relied on language in 18 U.S.C. § 1028A, where Congress expressly stated, "in addition to the punishment provided for" by the consecutive time, "a court shall not in any way reduce the term to be imposed for such crime so as to compensate for, or otherwise take into account, any separate term of imprisonment imposed or to be imposed for a violation of this section." The latter provision demonstrated that Congress knew how to include such a provision: "But no such intent finds expression in the language of § 924(c)." *Dean*, 137 S.Ct. at 1178. Therefore, the statutory silence had to be construed in favor of the defendant.

The unanimous opinion in *Dean* should control the present case. The defense has pointed to several statutes, most pertinently the Major Crimes Act, expressly incorporating Indian country, while the government only relies on inferences from statutory silence. As stated by the Court in *Dean*, "[w]e have said that '[d]rawing meaning from silence is particularly inappropriate' where 'Congress has shown that it knows how to direct sentencing practices in express terms.'" *Id.* at 1177 (quoting *Kimbrough v. United States,* 552 U.S. 85, 103 (2007)).

Shortly after *Dean*, the Court made a similar construction requiring a clear statement in *Honeycutt v. United States,* 137 S. Ct. 1626 (2017). In *Honeycutt*, the Court considered the government's claim that it could obtain a money judgment for future earnings under existing forfeiture statutes. The Court noted that money judgments were not mentioned in the general forfeiture statute, but the forfeiture statutes had express provisions for "substitute property" under five listed circumstances, none of which included future earnings. *Id.* at 1634-1635. The Court wrote that the express provision "demonstrates that Congress contemplated situations where the tainted property itself would fall outside the Government's reach." *Id*. at 1634. Based in part on the absence of express language, the Court unanimously rejected the government's invitation for a more expansive reading of federal forfeiture statutes. The same logic applies to the government's attempt to expansively read the Assimilative Crimes Act to cover Indian country. Section 7 lists the specific places to which the Act applies. Despite Congress' demonstrated readiness to use express language conferring criminal jurisdiction to Indian country when consistent with congressional intent, § 7 contains no references to Indian country.

### d. The District Court Erroneously Relied on Precedent That Does Not Control the Issues in This Case.

The district court's opinion relies on cases regarding the Assimilative Crimes Act that spring from *Williams v. United States,* 327 U.S. 711 (1946), a case that never addressed the issues raised here. In *Williams,* the Court held that the Assimilative Crimes Act did not make an Arizona statutory rape statute applicable to Indian country because there already existed a federal statute punishing the specific acts to which the Arizona crime applied *Id*. at 717-718. The *Williams* court assumed, without deciding, that the Assimilative Crimes Act applied in Indian country, while holding that a broader state law definition of a crime could not be assimilated once Congress had defined the crime. *Id.*

Lower courts, and the district court in this case, continue to rely upon *Williams* for the proposition that the Assimilative Crimes Act applies to Indian country. *See, e.g., United States v. Marcyes*, 557 F.2d 1361, 1365 n.1 (9th Cir. 1977); *United States v. Sosseur*, 181 F.2d 873, 874 (7th Cir. 1959); *but cf. Pueblo of Santa Ana v. Hodel*, 663 F.Supp. 1300, 1309–1310 (D.D.C. 1987) ("[T]he [*Williams*] Court never directly addressed whether the Act should apply to Indian lands."); *accord* 1-9 Cohen's Handbook of Federal Indian Law § 9.02(1)(c)(ii) (Nell Jessup Newton ed. 2012). The issues in this case were not briefed by the parties in *Williams*, and, consequently, the Court never decided the issues.

Nor was the issue squarely presented in *Marcyes,* where this Court held that Washington's fireworks laws were assimilated by the Assimilative Crimes Act and could be applied to Indian country because the laws at issue were prohibitory, rather than regulatory. 557 F.2d at 1365. While the appellants did not dispute that the Assimilative Crimes Act applied to Indians in Indian country as one of the "general laws" referenced in the Indian Country Crimes Act, *amicus curiae* argued that the history and intent of the Assimilative Crimes Act precluded its application to Indian country. *Id.* at 1365 n. 1. In a footnote, the *Marcyes* court disagreed, concluding that "the threshold question necessarily decided [in *Williams*] was whether the ACA even applied to Indian country." *Id.* The *Marcyes* court further relied on the statement in *Williams* that, because an Indian reservation was within federal jurisdiction, "many sections of the Federal Criminal Code apply to the reservation, including not only the Assimilative Crimes Act . . . ." *Id.* (quoting *Williams*, 327 U.S. at 713). While the *Marcyes* court speculated that the merits in *Williams* would never have been reached "had the court felt that the ACA did not apply to any crime committed upon Indian lands*," Id.* at 1365 n.1, such an inference is insufficient to support a conclusion that the Assimilative Crimes Act's application to Indian country is settled law, particularly in light of the relevant legislative history and the weighty tribal interests at stake.

Rather, as the district court in *Santa Ana* recognized, "no court has carefully scrutinized whether Congress ever intended that the ACA should be applied to tribal lands." 663 F.Supp. at 1309. Writing about *Williams,* the court in *Santa Ana* stated, "the Court never directly addressed whether the Act should apply to the Indian lands. Instead, the Court presumed that it applied, but then focused its analysis upon the preemptive application of the federal statutory rape law and concluded that the more lenient federal law superseded the state law." *Id.*

Merely because courts have applied the law in a particular way for years, or even decades, does not mean the law has been applied correctly. *Hagans v. Lavine*, 415 U.S. 528, 535 n.5 (1974) ("[W]hen questions of jurisdiction have been passed on in prior decisions sub silentio, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us."); *see also Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *United States v. Joyce*, 357 F.3d 921, 925 n. 3 (9th Cir. 2004) (same). "Constitutional rights are not defined by inferences from opinions which did not address the question at issue." *Texas v. Cobb*, 532 U.S. 162, 169 (2001).

Because subjecting tribal members to prosecution under state criminal laws involves a powerful intrusion into tribal sovereignty and self-government, the district court erred in failing to scrutinize the Assimilative Crimes Act's application to Indian country anew. Congressional silence regarding the Act's application to Indian country fails to provide sufficient evidence that Congress considered the issue and intended to subject tribal members to a broad swath of state criminal laws in federal court. Because Congress has largely left the primary statutes establishing federal criminal jurisdiction in Indian country intact since their enactment, "[i]t is impossible to assert with any degree of assurance that congressional failure to act represents affirmative congressional approval" of courts applying the Assimilative Crimes Act to Indian country. *See Alexander v. Sandoval*, 532 U.S. 275, 292 (2001) (criticizing reliance on congressional failure to amend a provision as a tacit ratification of courts' prior interpretations).

**III.    EVEN ASSUMING THE ASSIMILATIVE CRIMES ACT APPLIES TO INDIAN COUNTRY, THE ACT DID NOT APPLY IN THIS CASE BECAUSE THERE WAS NO "GAP-FILLING" ROLE FOR THE ACT TO PLAY.**

Congress' intent in passing the Assimilative Crimes Act was to fill the gaps in federal enclave law created by the absence of specific criminal statutes addressing conduct not already prohibited by federal law. *Marcyes,* 557 F.2d at 1364. Congress' intent was for the Assimilative Crimes Act to prevent offenses from being committed with "with impunity on federal enclaves simply by crossing jurisdictional lines." *Mariea,* 795 F.2d at 1099. (citing *United States v. Press Publishing Co.,* 219 U.S. 1, 12 (1911)). If a separate sovereign already has jurisdiction to prosecute on the federal enclave, then no "gap" in the law exists, and there is no risk that a person can commit crimes with "impunity" simply by entering onto federal lands.

In this case, as a member of the Confederated Tribes of Warm Springs, Mr. Smith was subject to Warm Springs Tribal Code § 310.520, which prohibits the identical conduct for which he was prosecuted in federal court. Thus, no "gap" in the law existed. Rather, the Confederated Tribes of Warm Springs, of which Mr. Smith is a proud member, already has a law that mirrors Or. Rev. Stat. § 811.540(1), the law the federal government chose to issue a federal indictment against Mr. Smith for violating. Under those circumstances, the Assimilative Crimes Act had no "gap-filling" role to

play, and the federal prosecution of Mr. Smith was a needless and unlawful intrusion into tribal sovereignty.

## CONCLUSION

As a member of the Confederated Tribes of Warm Springs, subject to the Tribe's system of law and order, Mr. Smith has a constitutional and statutory right to be subjected to deprivation of liberty by the federal government solely in accordance with the limited demands of the federal government's encroachments -- explicitly approved by Congress. In the absence of any clear statement from Congress, his deprivation of liberty for actions on his reservation, which the federal government recognizes as Indian country, violated the governing statutes and was an illegal intrusion into tribal sovereignty. For the foregoing reasons, this Court should reverse the convictions in this case based on the federal courts' lack of jurisdiction over the offenses.

Respectfully submitted this March 6, 2018.

*/s/ Conor Huseby*
Conor Huseby
Attorney for Defendant-Appellant

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | CA No. 17-30248 |
| | ) | |
| v. | ) | |
| | ) | |
| JOHNNY ELLERY SMITH, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

_____

**STATEMENT OF RELATED CASES**

_____

I, Conor Huseby, undersigned counsel of record for defendant-appellant, Johnny Ellery Smith, state pursuant to the Ninth Circuit Court of Appeals Rule 28-2.6, that I know of no other cases that should be deemed related.

Dated this March 6, 2018.

*/s/ Conor Huseby*_____
Conor Huseby
Attorney for Defendant-Appellant

**CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2018, I electronically filed the foregoing Opening Brief of Appellant with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Tammy Reynolds*
Tammy Reynolds