No. 17-30248

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JOHNNY ELLERY SMITH,
*Defendant-Appellant.*

Appeal from the United States District Court
for the District of Oregon in Portland
Hon. Anna J. Brown Presiding

# BRIEF OF AMICUS CURIAE
# SOUTHWEST INDIAN LAW CLINIC IN
# SUPPORT OF DEFENDANT-APPELLANT
# AND IN SUPPORT OF REVERSAL

Barbara L. Creel
UNIV. OF NM SCHOOL OF LAW
SOUTHWEST INDIAN LAW CLINIC
1117 Stanford Drive, NE
Albuquerque, NM 87131
Telephone: (505) 277-5265

Veronica C. Gonzales-Zamora
BROWNSTEIN HYATT FARBER SCHRECK, LLP
201 3rd Street NW, Suite 1800
Albuquerque, NM 87102
Telephone: (505) 244-0770
Facsimile: (505) 244-9266

*Counsel for Amicus Curiae Southwest
Indian Law Clinic*

March 20, 2018

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Fed. R. of App. P. 26.1, the Southwest Indian Law Clinic, states that it is not a publicly-traded corporation. It is a non-profit organized under the laws of New Mexico and a 501(c)(3) charitable organization registered with the Internal Revenue Service. It has no parent corporation, and no publicly-traded stock.

Dated: March 20, 2018

By */s/ Veronica C. Gonzales-Zamora*
Veronica C. Gonzales-Zamora

*Counsel for Amicus Curiae Southwest Indian Law Clinic*

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................ iii

Interest of Amicus Curiae ........................................... 1

Summary of Argument ................................................ 3

Argument ........................................................... 3

   I. The ACA has been Under-Analyzed, and Consequently, Misapplied, in This Context (Where Major Crimes Act does not Apply) ............................. 4

  II. An Improper Expansion of Jurisdiction Under the ACA Subjects Indian Defendants to Cherry-Picking by Federal Prosecutors within Three Sets of Criminal Codes .......................................... 7

       A. Singling Out Indians is an Equal Protection Issue .......................... 7

       B. Indian Canons of Construction Dictate Liberal Construction in Favor of Tribal Sovereignty ........................................... 10

       C. In the Criminal Law Context the Rule of Lenity Requires any Ambiguity to be Resolved in Favor of the Accused ................. 11

  III. A Practical Summary of Criminal Jurisdiction in Indian Country ............. 14

  IV. Applying the Formula in this Context, Under Indian Law Principles, the ACA has no Application in This Case or Similar Context .................. 14

Conclusion ......................................................... 14

Certificate of Compliance with Rule 32 ............................. ii

Certificate of Service ............................................. iii

# TABLE OF AUTHORITIES

**Cases**

*Acunia v. United States*,
    404 F.2d 140 (9th Cir. 1968) ............................................................... 5

*Bryan v. Itasca County*,
    426 U.S. 373 (1976) ........................................................................... 10

*Bryan v. United States*,
    524 U.S. 184 (1998) ........................................................................... 13

*County of Yakima v. Confederated Tribes & Bands of the Yakima Indian Nation*,
    502 U.S. 251 (1992) ...................................................................... 10-11

*EEOC v. Karuk Tribe House Auth.*,
    260 F.3d 1071 (9th Cir. 2001) ........................................................... 10

*Ex Parte Crow Dog*,
    109 U.S. 556 (1883) ............................................................................. 7

*Fisher v. Dist. Ct.*,
    424 U.S. 382 (1976) ........................................................................... 11

*Gila River Indian Cmty. v. United States*,
    729 F.3d 1139 (9th Cir. 2013) ........................................................... 11

*McBoyle v. United States*,
    283 U.S. 25 (1931) ............................................................................. 12

*Michigan v. Bay Mills Indian Cmty.*,
    134 S. Ct. 2024 (2014) ....................................................................... 11

*Montana v. Blackfeet Tribe*,
    471 U.S. 759 (1985) ........................................................................... 10

*Ramah Navajo School Board v. Bur. of Revenue*,
    458 U.S. 832 (1982) ........................................................................... 10

*Rincon Band of Luiseno Indians v. Schwarzenegger,*
   602 F.3d 1019 (9th Cir. 2010) ........................................................ 11

*Pueblo of Santa Ana v. Hodel,*
   663 F.Supp. 1300 (D.D.C. 1987) ................................................... 13

*Santa Clara Pueblo v. Martinez,*
   436 U.S. 49, 59–60 (1978) ............................................................ 11

*United States v. Antelope,*
   430 U.S. 641 (1977) ........................................................................ 8

*United States v. Bass,*
   404 U.S. 336 (1971) ...................................................................... 12

*United States v. Blue,*
   722 F.2d 383 (8th Cir.1983) ........................................................... 5

*United States v. Cleveland,*
   503 F.2d 1067 (9th Cir. 1974) ........................................................ 9

*United States v. Dion,*
   476 U.S. 734 (1986) ...................................................................... 11

*United States v. Kozminski,*
   487 U.S. 931 (1988) ...................................................................... 13

*United States v. Evans,*
   333 U.S. 483 (1948) ...................................................................... 13

*United States v. Lara,*
   541 U.S. 193 (2004) ........................................................................ 6

*United States v. Marcyes,*
   557 F.2d 1361 (9th Cir. 1977) ................................................. 4,5,6

*United States v. Quiver,*
   241 U.S. 602 (1916) ........................................................................ 5

iv

*United States v. Santos,*
    128 S. Ct. 2020 (2008) ...................................................................12

*United States v. Sosseur,*
    181 F.2d 873 (7th Cir. 1950) ............................................. 6

*United States v. Thunder Hawk,*
    127 F.3d 705 (8th Cir. 1997) ............................................. 5

*United States v. Wanoskia,*
    800 F.2d 235 (10th Cir. 1986) ..........................................9

*United States v. Wheeler*
    435 U.S. 313 (1978) ................................................... 7-8,

*United States v. Wiltberger,*
    18 U.S. (1 Wheat) 76 (1820) ......................................12, 13

*Williams v. Babbitt,*
    115 F.3d 657 (9th Cir. 1997) .............................................9

*Williams v. United States,*
    327 U.S. 711 (1946) ...............................................3, 4-5

## Statutes

8 U.S.C. §1401 (b) ...................................................................12

18 U.S.C. § 13 ...............................................................*passim*

18 U.S.C. § 1152 ...........................................................*passim*

18 U.S.C. § 1153 ...............................................4, 5, 9, 15

18 U.S.C. § 1303 ...................................................................2

25 U.S.C. §§ 1321-22 ...........................................................6

Fed. R. App. P. 29(a)(4)(E) .................................................1

Cir. Rule 29-2 .......................................................................................... 1

Or. Rev. Stat. § 811.540(1) ..................................................................... 6

**Other Authorities**

BARBARA L. CREEL, THE RIGHT TO COUNSEL OF INDIANS ACCUSED OF CRIME: A
TRIBAL AND CONGRESSIONAL IMPERATIVE, MICHIGAN J. RACE & L. VOL. 18, PG.
351 ........................................................................................................ 13

COHEN'S HANDBOOK OF FEDERAL INDIAN LAW (2005) ......................................... 4, 5

Indian Law and Order Comm'n, *A Roadmap for Making Native America Safer:
Report to the President and Congress of the United States* (Nov. 2013) (Figure 1-
1) ........................................................................................................... 14

Jon M. Sands, Departure Reform and Indian Crimes: Reading the Commission's
Staff Paper with "Reservations," 9 Fed. Sent. Rep. 144 (1996) ............................ 8-9

U. S. Sentencing Comm'n, Report of the Native American Advisory Group 21–25
(Nov. 4, 2003). ......................................................................................... 8-9

Warm Springs Tribal Code § 310.520 .................................................... 6

## INTEREST OF AMICUS CURIAE

Barbara Creel, is a tenured Professor of Law and the Director of the Southwest Indian Law Clinic ("SILC")[1], at the University of New Mexico School of Law. Professor Creel teaches, researches, and practices federal Indian law, and criminal law and procedure. SILC is a nationally recognized clinical program dedicated to legal representation of Tribes, Tribal entities and Native American individuals in state, federal, and tribal courts. SILC has expertise in multi-jurisdictional litigation, analyzing complex legal issues involving the intersection of federal Indian law, criminal law, constitutional law and civil/human rights.

As an enrolled tribal member, a former assistant federal public defender, and former tribal criminal defender for the Confederated Tribes of the Warm Springs Indian Reservation, Creel has a unique and valuable perspective. She has testified before Congress, the Indian Law and Order Commission, and the Committee to review the Criminal Justice Act Program on issues of criminal jurisdiction, right to counsel for Native Americans, indigent defense, access to justice  and the writ of habeas corpus under the Indian Civil Rights Act. She has consulted or co-counseled

---

[1] Pursuant to Cir. Rule 29-2(a), amicus states that all parties have consented to the filing of this brief. Pursuant to Fed. R. App. P. 29(a)(4)(E), amicus further states that no counsel for a party authored this brief in whole or in part. No party, no counsel for a party, and no person other than Amicus, their members, and their counsel made a monetary contribution intended to fund preparation or submission of this brief.

on complex federal cases involving Native American defendants. Under her direction, SILC has successfully litigated numerous federal habeas corpus petitions under 25 U.S.C. Section 1303, and has a unique understanding of the individual rights of defendants vis- a-vis their tribe, as well as a special expertise in Indian law, sovereignty, and civil rights. No other Native American rights organization is focused on criminal defense and Indian law.

SILC has an interest in the issue presented by Defendant-Appellant Johnny Smith. Specifically, the Court's determination of whether the Assimilative Crimes Act, 18 U.S.C. Section 13 ("ACA"), and the Indian Country Crimes Act, 18 U.S.C. Section 1152 ("ICCA"), can be used to apply state laws to Indian defendants committing victimless or non-major crimes affects the work of clinical law students and other organizations protecting Indian defendants' rights. SILC is concerned with the right to equal protection and right to due process of persons accused of crime and the right to self-government of tribal nations in the United States.

While Congress  established the ACA as a "gap-filler," Congress has never explicitly  authorized the application of the ACA to expand criminal jurisdiction to apply state law to prosecute  Indians who have committed victimless or non-major crimes. The federal courts have not properly reviewed the ACA and the racial application of the ACA to Indians under the ICCA. This under-analysis or failure to comprehend the complexity of race-based application of the laws has led to a

haphazard and incorrect application of the ACA in Indian Country. SILC has an interest in ensuring equal protection of Indian defendants' rights and that tribal sovereign authority to self-govern remains protected from state or federal intrusion.

## SUMMARY OF ARGUMENT

Prior cases, have assumed, without analysis that the ACA applies to Indian Country. This review of the ACA failed to consider and incorporate clearly established Indian law principles and foundational tenets of criminal law in the analysis of its applicability to Indians and Indian Country. Most importantly, the precedent and the Court below failed to understand the racial component involved in the analysis. These failures to understand the principles of Indian law and criminal law, have rendered haphazard and incoherent decisions.

Amici seek to bring clarity to the complex jurisdictional interplay and provide a practical framework for the proper analysis in applying the ACA and determining whether jurisdiction exists for purposes of prosecuting conduct occurring in Indian Country. *Williams v. United States,* 327 U.S. 711 (1946) involved a  non-Indian defendant's rape of an Indian victim -- and thus, the Court did not reach the application of the ACA to Indian defendants under the ICCA. There can be no such application consistent with clearly establish principles of federal Indian law and jurisdiction.

## ARGUMENT

**I.    The ACA has been Under-Analyzed, and Consequently, Misapplied, in This Context (Where Major Crimes Act does not Apply).**

*Williams v. United States,* 327 U.S. 711 (1946) is often cited for the proposition that the ACA applies to Indian country. *See, e.g., United States v. Marcyes*, 557 F.2d 1361, 1365 n.1 (9th Cir. 1977); *United States v. Sosseur*, 181 F.2d 873, 874 (7th Cir. 1959). *Williams* considered a narrow exercise of jurisdiction over a **non-Indian's conduct** on the reservation – the precise type of conduct the ACA was developed to address. 327 U.S. at 714 ("While the laws and courts of the State of Arizona may have jurisdiction over offenses committed on this reservation between persons who are not Indians, the laws and courts of the United States, rather than those of Arizona, have jurisdiction over offenses committed there, as in this case, by one who is not an Indian against one who is an Indian."); COHEN'S HANDBOOK OF FEDERAL INDIAN LAW ("COHEN'S") at 734 (2005). *Williams* has been misapplied to extend to **Indian conduct** on the reservation, despite an absence of jurisdiction under federal law.

In Indian Country, the federal government has jurisdiction under the Major Crimes Act ("MCA"), 18 U.S.C. Section 1153, over 16 enumerated crimes when committed by Indians against other Indians or non-Indians. In addition, the ICCA extends federal criminal laws that apply to areas of exclusive federal jurisdiction such as military bases and national parks, cybersecurity, counterfeiting money and

other federal laws to Indian country. But, if a crime committed in Indian country is not covered by the MCA, or in an express federal criminal code, a federal prosecutor may apply state criminal law through the ACA. *See Williams*, 327 at 711 (assuming that the ACA was subsumed within the ICCA); COHEN'S at 734. The ICCA applies where a tribal member and a non-Indian are involved as victim and perpetrator, and thus the defendant may be Indian or non-Indian.

The plain language of the ICCA has three important exceptions relevant to Defendant Johnny Smith's case. First, Indian-against-Indian crimes are not covered. 18 U.S.C. § 1152. That includes victimless crimes. *See e.g., United States v. Quiver*, 241 U.S. 602, 605-606 (1916) (adultery not covered by the ICCA because it "is a voluntary act on the part of both participants, and, strictly speaking, not an offense against the person of either"); *see also* COHEN'S at 735-736 (citing and criticizing lower court cases that have not followed *Quiver*); *United States v. Blue*, 722 F.2d 383, 386 n.4 (8th Cir. 1983) (observing in dicta that "the Indian against Indian exception has been read very broadly to include 'victimless' crimes affecting only Indians"); *Acunia v. United States*, 404 F.2d 140 (9th Cir. 1968) (discussing crime of incest as being within exclusive tribal jurisdiction). *But see United States v. Thunder Hawk*, 127 F.3d 705, 708 (8th Cir. 1997) (driving under influence of alcohol is victimless crime not subject to Indian-against-Indian exception); *United States v. Marcyes*, 557 F.2d 1361, 1364–65 (9th Cir. 1977)

(upholding fireworks possession conviction without discussion of exception); *United States v. Sosseur*, 181 F.2d 873, 876 (7th Cir. 1950) (sustaining conviction for operating slot machines where Indian "defendant furnished the means by which non-Indians were enabled and induced to violate the Wisconsin law"). In this case, there is no evidence that Mr. Smith's conduct in eluding police involved a victim, and as a crime involving only Indians (even potentially), Mr. Smith's conduct is not within the reach of the ICCA.

Second, if an Indian has been punished for a crime under tribal law, that person may not be prosecuted under the ICCA for the same offense. 18 U.S.C. § 1152. Indian Tribal courts have criminal jurisdiction over their own members and other Indians who are members of federally recognized tribes. *See United States v. Lara,* 541 U.S. 193 (2004). In this case, Mr. Smith, an Indian defendant, was punished by the law of the tribe prior to being prosecuting for the same conduct in federal court. Mr. Smith was subject to Warm Springs[2] Tribal Code § 310.520, which prohibits eluding police and the Or. Rev. Stat. § 811.540(1) prohibiting the same conduct. The prior punishment by the law of the Tribe precluded the federal court's punishment for the same conduct.

---

[2] *See* 25 U.S.C. §§ 1321-22 (excluding Warm Springs Reservation from state jurisdiction under Public Law 280).

Third, no party argues that Mr. Smith is subject to prosecution for a violation of state law in federal court based upon a treaty between the sovereigns. 18 U.S.C. § 1152. All three exceptions apply, thereby supporting the relief sought in Defendant-Appellant's Motion to Dismiss for lack of Subject Matter Jurisdiction. Because there is no federal law covering the conduct which Mr. Smith is accused and because Mr. Smith was punished by his tribe, and there is otherwise no treaty conferring jurisdiction over him, this case is exclusively within the tribe's jurisdiction. *See Ex Parte Crow Dog,* 109 U.S. 556 (1883) (holding that the ICCA did not apply where an Indian was accused of murdering another Indian because the statute excludes Indians v. Indians; excludes punishment by law of land; and there is no treaty conferring exclusive jurisdiction).

II.  **An Improper Expansion of Jurisdiction under the ACA Subjects Indian Defendants to Cherry-Picking by Federal Prosecutors within Three Sets of Criminal Codes.**

    A.  **Singling out Indians is An Equal Protection Issue.**

Tribal courts have the power to bring such prosecutions independently of the federal government. Thus, a defendant may face prosecution from the tribal court and then face prosecution from a federal court for the same offense. Because Indian tribes are separate sovereigns with inherent powers predating the existence of the United States, the Supreme Court held in *United States v. Wheeler* that dual prosecutions for the same offense under these circumstances do not violate the

double jeopardy clause of the Fifth Amendment of the United States Constitution. 435 U.S. 313, 322–30 (1978) (federal prosecution following acquittal in tribal court does not normally raise double jeopardy concerns). Uniquely, Indian defendants are subject to three sets of laws - state, federal, and tribal - resulting in what would otherwise be inherently unfair and would implicate double jeopardy protections for a non-Indian. This allows federal prosecutors to pick and choose to prosecute for harsher penalties or under easier burdens of proof as though playing with a person's freedom is nothing more than a strategic game.

The inherent unfairness of subjecting Indians to criminal punishment, depriving them of their liberties, deprives Indians of equal protection of laws. Although raised before the United State Supreme Court unsuccessfully in *United States v. Antelope*, the Court did not foreclose the existence of equal protection issues in other contexts. 430 U.S. 641 (1977) (denying equal protection challenge because Indian status is a political classification not a racial one). The Court left open the question of whether federal prosecution of a non-enrolled Indian living on the reservation and maintaining tribal relations violates equal protection, and reserved judgment on whether subjecting Indians and non-Indians tried in federal court for the same offense to different penalties is a violation.[3] *Id.* at 649, n.11.

---

[3] Given the disproportionate number of Indians prosecuted in federal court for actions that would normally be prosecuted in state court, concern has arisen about

In fact, the Ninth Circuit Court of Appeals has held that disparities in punishment and burden of proof solely on the basis of Indian race violated an Indian's right to equal protection of laws. *United States v. Cleveland,* 503 F.2d 1067 (9th Cir. 1974) (holding that substantial disparities in potential punishment and burden of proof between Indian and non-Indian defendants charged with committing an identical offense solely on the basis of race was a violation of equal protection). *See also Williams v. Babbitt,* 115 F.3d 657, 661-666 (9th Cir. 1997) (applying the ICC and holding that BIA policy prohibiting non-Indians from engaging in reindeer herding was "not unreasonable" but declining to defer to the agency interpretation due to potential Equal Protection concerns). *But see United States v. Wanoskia,* 800 F.2d 235, 239 (10th Cir. 1986) (rejecting equal protection challenge where an Indian defendant was sentenced to sixty years for second degree murder of an Indian whereas a similar crime between non-Indians would receive a maximum nine-year sentence in state court; reasoning that a non-Indian would be subject to the same federal penalties under the ICCA as the Indian defendant under the MCA). A consideration of the Indian Canons of Construction and the rule of lenity can help mitigate this disparate impact.

---

the disproportionate impact of the sentencing guidelines on Indians. *See* Jon M. Sands, *Departure Reform and Indian Crimes: Reading the Commission's Staff Paper with "Reservations,"* 9 Fed. Sent. Rep. 144 (1996); U. S. Sentencing Comm'n, Report of the Native American Advisory Group 21–25 (Nov. 4, 2003).

## B. Indian Canons of Construction Dictate Liberal Construction in Favor of Tribal Sovereignty.

The Supreme Court of the United States has established that "the standard principles of statutory interpretation do not have their usual force in cases involving Indian law." *Montana v. Blackfeet Tribe*, 471 U.S. 759, 766 (1985). The Indian Canons of Construction (ICC) were created to guide statutory interpretations involving Indian law. The ICC will normally displace other competing canons of construction. *See EEOC v. Karuk Tribe House Auth.,* 260 F.3d 1071 (9th Cir. 2001) (normal rules of statutory construction dictating that tribe was employer under Age Discrimination in Employment Act do not apply in Indian law cases).

The ICC require that statutes be liberally construed in favor of tribes. *See, e.g., Ramah Navajo School Board v. Bur. of Revenue*, 458 U.S. 832, 846 (1982) ("We have consistently admonished that federal statutes and regulations relating to tribes and tribal activities must be construed generously in order to comport with … traditional notions of [Indian] sovereignty and with the federal policy of encouraging tribal independence); *Bryan v. Itasca County*, 426 U.S. 373, 392 (1976) ("[W]e must be guided by that 'eminently sound and vital canon' … that 'statutes passed for the benefit of dependent Indian tribes are to be liberally construed, doubtful expressions being resolved in favor of the Indians.' "). All ambiguities be resolved in the Indian tribes' favor. *See, e.g., County of Yakima v.*

*Confederated Tribes & Bands of the Yakima Indian Nation*, 502 U.S. 251, 269 (1992) ("When we are faced with these two possible constructions [of a statute], our choice between them must be dictated by a principle deeply rooted in this Court's Indian jurisprudence: 'Statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit.' "). *See also Gila River Indian Cmty. v. United States*, 729 F.3d 1139, 1148 (9th Cir. 2013).

In addition, statutes must be interpreted for the preservation of tribal sovereignty and property rights unless Congress's intent is clear and unambiguous to the contrary. *See, e.g., Michigan v. Bay Mills Indian Cmty.,* 134 S. Ct. 2024, 2031 (2014) ("[A] congressional decision [to abrogate tribal immunity] must be clear…. That rule of construction reflects an enduring principle of Indian law: Although Congress has plenary authority over tribes, courts will not lightly assume that Congress in fact intends to undermine Indian self-government."); *Rincon Band of Luiseno Indians v. Schwarzenegger*, 602 F.3d 1019 (9th Cir. 2010). *See also United States v. Dion,* 476 U.S. 734, 739-40 (1986); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 59–60 (1978); *Fisher v. Dist. Ct.*, 424 U.S. 382, 387–388 (1976). A proper analysis under the Indian Canons of Construction requires this court vacate the Order of Dismissal entered by the trial court.

### C. In the Criminal Law Context, the Rule of Lenity Requires any Ambiguity to be Resolved in Favor of the Accused.

11

Indians are United States citizens[4] entitled to constitutional protections. Indians charged with crimes in federal or state courts have all the rights afforded other criminal defendants. To the extent the plain language of a criminal statute like Section 1152 is ambiguous, the rule of lenity provides that doubts must be resolved in favor of the defendant. *United States v. Bass*, 404 U.S. 336, 348 (1971); s*ee also United States v. Wiltberger*, 18 U.S. (1 Wheat) 76, 95 (1820) (Marshall, C.J.) ("The rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself."). "This venerable rule not only vindicates the fundamental principle that no citizen should be … subjected to punishment that is not clearly prescribed. It also places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead." *United States v. Santos*, 128 S. Ct. 2020, 2025 (2008) (plurality opinion) (Scalia, J.).

The rule of lenity serves at least three purposes. First, it ensures fair notice. "[I]t is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." *McBoyle v. United States,* 283 U.S. 25, 27 (1931). Second, it preserves the separation of powers. Chief Justice Marshall observed: "the power of punishment is vested in the legislative, not in the judicial department. It is the legislature, not

_____

[4] Indian Citizenship Act of 1924, June 2, 1924, 8 U.S.C. §1401 (b), 43 Stat. 253.

the court, which is to define a crime, and ordain its punishment." *Wiltberger*, 18 U.S. at 95. "This policy embodies the instinctive dictates against men languishing in prison unless the lawmaker has clearly said they should." *Id.* Lenity prevents the imposition of punishment that Congress has not clearly authorized, because Congress is the only branch of government with the authority to establish criminal penalties. *See United States v. Evans*, 333 U.S. 483, 486 (1948). Third, it "minimize[s] the risk of selective or arbitrary enforcement" of criminal statutes by requiring the resolution of ambiguity in the same direction. *United States v. Kozminski*, 487 U.S. 931, 952 (1988); *see also Bryan v. United States*, 524 U.S. 184, 205 (1998) (Scalia, dissenting) (rule of lenity "foster[s] uniformity in the interpretation of criminal statutes"). All three of these purposes apply here where the individual Indian defendant faces federal prosecution for a state crime, where there is not clear jurisdiction, and is exposed to harsher sentencing in federal court. *See* Barbara L. Creel, *The Right to Counsel of Indians Accused of Crime: A Tribal and Congressional Imperative*, Michigan J. Race & L. Vol. 18, pg. 351. The more respectful view of tribal self-determination requires recognition of the tribal court conviction to supersede the federal law. *See, e.g., Santa Ana,* 663 F.Supp. at 1309 (focusing its analysis upon the "preemptive application of the federal statutory rape law and concluded that the more lenient federal law superseded the state law.").

## III.  A Practical Summary of Criminal Jurisdiction in Indian Country.[5]



The ICCA explicitly states that offenses involving an Indian against another Indian or their property, is not within the jurisdiction of the federal government, rather it remains with the tribe. While the statute explicitly applies to crimes that have identifiable victims, it remains silent on crimes that are inherently victimless. Interpreting this silence liberally in favor of the tribes requires that inherently victimless crimes be left to tribal governments to enforce.

## IV.  Applying the Formula in this Context, Under Indian Law Principles, the ACA has no Application in This Case or Similar Context.

Johnny Smith, an Indian defendant, cannot be subject to federal prosecution through the ACA for a victimless crime which occurred within Indian country. The

---

[5] Source: Indian Law and Order Comm'n, *A Roadmap for Making Native America Safer: Report to the President and Congress of the United States* (Nov. 2013) (Figure 1-1), available at https://www.aisc.ucla.edu/iloc/report/.

ACA does not expressly state a Congressional intent to abrogate the tribes sovereign power to enforce the laws within an Indian reservation. The ICC require congressional silence to be interpreted in favor of tribal sovereignty and jurisdiction. Therefore, the ACA alone cannot create federal jurisdiction over the criminal conduct of Johnny Smith.

For the ACA to have any applicability in Indian country, jurisdiction must come from either the ICCA or the MCA. As this is not a major crime as defined in the MCA it can only come from the ICCA. However, the ICCA has left any crime that either involves only Indians or was already prosecuted by the tribe to the jurisdiction of the tribe. Johnny Smith committed a victimless crime and was tribally prosecuted for his crime, both of which preclude federal prosecution under the ICCA. As there is no federal jurisdiction under the ICCA for Johnny Smith's conduct, the ACA also does not apply. In addition, Johnny Smith is entitled to Equal Protection of laws. Instead, he is subject to cherry-picking by federal prosecutors among three sets of laws and potentially harsher punishments for the same conduct. A proper application of the ACA, liberally construed in favor of Indians and with an eye toward lenity, avoids this harsh and unfair result.

## CONCLUSION

Amicus Curiae Southwest Indian Law Clinic respectfully requests that this Court reverse the district court's Order of Denial of Motion to Dismiss.

**Respectfully,**

**UNIVERSITY OF NEW MEXICO SCHOOL OF LAW
SOUTHWEST INDIAN LAW CLINIC**

By */s/ Barbara Creel*
    Barbara Creel
    1117 Stanford Drive, NE
    Albuquerque, NM 87131
    Telephone: (505) 277-5265
    Facsimile: (505) 277-4367
    Email: creel@law.unm.edu

    and

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**

By */s/ Veronica C. Gonzales-Zamora*
    Veronica C. Gonzales-Zamora
    201 3rd Street NW, Suite 1800
    Telephone: (505) 244-0770
    Facsimile: (505) 244-9266
    Email: vgonzales-zamora@bhfs.com

*Counsel for Amicus Curiae Southwest Indian Law
Clinic*

# CERTIFICATE OF COMPLIANCE WITH RULE 32

Pursuant to Fed. R. App. P. 32 and 29, I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 15 pages, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

Dated: March 20, 2018

By */s/ Veronica C. Gonzales-Zamora*
Veronica C. Gonzales-Zamora

*Counsel for Amicus Curiae Southwest Indian Law Clinic*

# CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2018, I electronically filed the foregoing **Amicus Curiae Brief of the Southwest Indian Law Clinic** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that I am registered CM/ECF user and that all parties have registered as CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: March 20, 2018

By */s/ Veronica C. Gonzales-Zamora*
Veronica C. Gonzales-Zamora

*Counsel for Amicus Curiae Southwest Indian Law Clinic*

16610815