No. 17-30248

_____

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**v.**

**JOHNNY ELLERY SMITH,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the District of Oregon**

_____

**REPLY BRIEF OF APPELLANT**

_____

**Conor Huseby**
**Assistant Federal Public Defender**
**101 SW Main Street, Suite 1700**
**Portland, Oregon 97204**
**(503) 326-2123**

**Attorney for Defendant-Appellant**

# TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................................. iii

Introduction .........................................................................................................1

Legal Authority and Argument ...........................................................................1

A.  Because This Appeal Addresses A Purely Legal Question Regarding
Jurisdiction, The Government's Recitation Of The Facts And Mr. Smith's
Criminal History Is Irrelevant.......................................................................... 1

B.  The Government's Reliance On *Williams* And Its Progeny Is
Misplaced Because *Williams* Never Decided the Jurisdictional Issue
Raised In This Appeal, And Because The Reasoning Of Subsequent
Supreme Court Authority Establishes A Lack Of Federal Jurisdiction ......... 2

1.  Cases in which jurisdictional issues are not briefed by the parties
and addressed by the court, or in which jurisdiction is assumed by the
court, do not establish precedent ................................................................... 3

2.  Post-Williams case law provides controlling authority establishing that
the federal government lacks jurisdiction to prosecute Indians for non-
major crimes committed in Indian country under state law .......................... 8

C.  The Cases Upon Which The Government Relies Illustrate That
The Assimilative Crimes Act Was Inappropriately Applied To Mr. Smith  10

D.  Applying the Assimilative Crimes Act to an Indian Defendant in
Indian Country Does Not "Honor Native Sovereign Rights," But Rather
Gives Short Shrift To Native American Tribal Sovereignty........................ 14

Conclusion ....................................................................................................... 15

Certificate of Compliance ............................................................................... 16

i

Certificate of Service ............................................................................................ 18

# TABLE OF AUTHORITIES

**Page**

## Cases

*Acunia v. United States*,
    404 F.2d 140 (9th Cir. 1968) .......................................................... 4, 6

*Couer D'Alene Tribe of Idaho v. Hammond*,
    384 F.3d 674 (9th Cir. 2004) ......................................................... 9, 10

*County of Oneida v. Oneida Indian Nation*,
    470 U.S. 226 (1985)........................................................................13

*EEOC v. Karuk Tribe Hous. Auth.*,
    260 F.2d 1071 (9th Cir. 2001) ........................................................13

*Ex Parte Crow Dog*,
    109 U.S. 556 (1883)........................................................................13

*Greenlaw v. United States*,
    554 U.S. 237 (2008) ......................................................................... 3

*Hagans v. Lavine*,
    415 U.S. 528 n.5 (1974) ................................................................... 3

*Bryan v. Itasca County, Minnesota*,
    426 U.S. 373 (1976) ....................................................................... 8, 9

*United States v. Kaufman*,
    862 F.2d 236 (9th Cir. 1988) ........................................................... 6

*Michigan v. Bay Mills Indian Cmty.*
    134 S. Ct. 2024 (2014) ................................................................... 14

*Nat'l Aeronautics & Space Admin v. Nelson*,
    562 U.S. 134 (2011) ......................................................................... 7

*Pueblo of Santa Ana v. Hodel*,
    663 F.Supp. 1300 (D. D.C. 1987) ................................................. 4, 5

iii

*United States v. Bare,*
806, F.3d 1011 (9th Cir. 2015) .......................................................6, 12

*United States v. Billadeau,*
275 F.3d 692 (8th Cir. 2001) ........................................................ 12

*United States v. Garcia-Jimenez,*
807 F.3d 1079 (9th Cir. 2015) ....................................................... 3

*United States v. Marcyes,*
557 F.2d 1361 (9th Cir. 1977) ..................................................... 4, 5

*United States v. Mariea,*
795 F.2d 1094 (1st Cir. 1986) .......................................................11

*United States v. McMillan,*
820 F.2d 251 (8th Cir. 1987) ........................................................ 12

*United States v. Pino,*
606 F.2d 908 (10th Cir. 1979) .................................................. 4, 6, 7

*United States v. Sosseur,*
181 F.2d 873 (7th Cir. 1950) ......................................................... 7

*Williams v. United States,*
327 U.S. 711 (1946) ............................................................. 2, 4, 11

## Statutes
18 U.S.C. § 7 ................................................................................ 4, 9

## Other
Fed. R. App. P. 32(a) ...................................................................... 17

Tribal Code § 310.520 ..................................................................... 13

**Introduction.**

The government's detailed exposition of the facts underlying Mr. Smith's convictions and Mr. Smith's criminal history are completely irrelevant to the purely legal question of the federal government's authority to prosecute Native Americans for non-major crimes that occur on Indian lands and that are specifically encompassed and punishable under the Tribal Code of the Confederated Tribes of Warm Springs. The government relies on cases that carry no precedential value, and points to no express statutory language conferring jurisdiction over minor crimes through the Assimilated Crimes Act, even though – when Congress so intends – there are clear examples of such language being used. Finally, the government distorts the issue of tribal sovereignty in this case and ignores the well-established canon that, when interpreting statutes that affect tribal sovereignty, courts will not intrude upon the rights of an Indian tribe to govern itself absent unambiguously clear language from Congress.

**Legal Authority and Argument.**

**A.      Because This Appeal Addresses A Purely Legal Question Regarding Jurisdiction, The Government's Recitation Of The Facts And Mr. Smith's Criminal History Is Irrelevant.**

The government's Statement of Facts is filled almost entirely with a detailed description of the alleged crimes in this case along with a recitation of Mr. Smith's

criminal history. Gov. Resp. at 1-4. Mr. Smith raises a purely legal question of jurisdiction in this appeal.  The facts relevant to this appeal are simple:

- The crime of eluding a police officer is not enumerated in the Major Crimes Act;

- The crime of eluding a police officer is expressly proscribed by the Tribal Code of the Confederated Tribes of Warm Springs;

- Mr. Smith is a Warm Springs tribal member and the relevant conduct occurred on Indian country.

The remaining descriptions regarding the conduct underlying the allegations in the indictment and Mr. Smith's criminal history are irrelevant to the Court's resolution of this appeal.

**B.     The Government's Reliance On *Williams* And Its Progeny Is Misplaced Because *Williams* Never Decided the Jurisdictional Issue Raised in This Appeal, And Because The Reasoning Of Subsequent Supreme Court Authority Establishes A Lack Of Federal Jurisdiction.**

The government places relies on cases that, directly or indirectly, derive from *Williams v. United States,* 327 U.S. 711 (1946). But *Williams* did not address the arguments made by the defense in the present case, and, therefore, neither *Williams* nor the cases that depend upon it are controlling. Instead, this Court should follow the reasoning of subsequent authority that establishes that, in the absence of clearly expressed congressional intent to encroach upon tribal sovereignty, the federal

government lacks jurisdiction to prosecute an Indian for violation of state law based on acts committed in Indian country.

1. **Cases in which jurisdictional issues are not briefed by the parties and addressed by the court, or in which jurisdiction is assumed by the court, do not establish precedent.**

The rules of precedent are governed by the party presentation principle, which relies on "the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). Issues not raised by the parties are not decided. *United States v. Garcia-Jimenez*, 807 F.3d 1079, 1084-85 (9th Cir. 2015). A corollary of the party presentation principle forecloses preclusive effects of cases on jurisdictional questions, such as the one presently before the Court: "[W]hen questions of jurisdiction have been passed on in prior decisions sub silentio, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us." *Hagans v. Lavine*, 415 U.S. 528, 535 n.5 (1974).

In their reply, the government repeatedly cites to cases that did not address the arguments in the present case without addressing the precedent relied upon by the defense holding that those cases have no precedential effect. Opening Br. at 22-25. The cases cited by the government as holding that the Assimilative Crimes Act is applicable to Indian country as one of the "general laws" referenced in the Indian

Country Crimes Act do not address the arguments made in this case. Gov. Resp. at 7, 8, 14 (citing *United States v. Bare,* 806, F.3d 1011 (9th Cir. 2015), *United States v. Marcyes,* 557 F.2d 1361 (9th Cir. 1977), *Acunia v. United States,* 404 F.2d 140 (9th Cir. 1968), and *United States v. Pino,* 606 F.2d 908 (10th Cir. 1979)). Each of these cases relies on *Williams*, but that case did not hold that the Assimilative Crimes Act was one of the "general laws" applicable to Indian Country, nor did it hold that Indian country is one of the "places" subject to the Assimilative Crimes Act as described in 18 U.S.C. § 7.

*Williams* addressed whether the state could assimilate an Arizona statutory rape law against a *non-Indian* in Indian country. *Williams,* 327 U.S. at 714. Ultimately, the *Williams* Court held that the Assimilative Crimes Act could not be used to assimilate Arizona law because there already existed a federal statute punishing the specific acts to which the Arizona law applied. *Id.* 717-18. The more sweeping jurisdictional issues raised in this case, as well as the more specific jurisdictional issue regarding Native American defendants, was never briefed or addressed in *Williams.* As the court recognized, in *Pueblo of Santa Ana v. Hodel,* 663 F.Supp. 1300, 1309-1310 (D. D.C. 1987), "the [*Williams*] Court never directly addressed whether the Act should apply to Indian lands." Rather, "the Court presumed that it applied, but then focused its analysis upon the preemptive

4

application of the federal statutory rape law and concluded that the more lenient federal law superseded the state law." *Id.* In fact, "no court has carefully scrutinized whether Congress intended that the ACA be applied to Indian lands." *Id.* at 1309.

Contrary to the Supreme Court's instruction in *Hagans*, the government relies on silence and cursory references to *Williams* to claim authority that does not exist. In *Marcyes,* the Ninth Circuit held that Washington's fireworks laws were assimilated by the Assimilative Crimes Act and could be applied to Indian country because the laws at issue were prohibitory, rather than regulatory. 557 F.2d at 1365. As noted in Mr. Smith's Opening Brief, the *Marcyes* Court's treatment of the jurisdictional issue (which was not raised by the defendant), in a footnote relying on *Williams,* is insufficient to support a conclusion that the Assimilative Crimes Act's application to Indian lands is settled law, particularly in light of the relevant legislative history and the weighty tribal interests at stake.[1] Opening Br. At 23.

In *Bare,* the court wrote to address the defendant's challenge of a 4-level sentencing enhancement and a condition of supervised release permitting searches

---

[1] It is unclear from *Marcyes* whether any of the defendants were Indians. However, the opinion does not contain any discussion of the requirement, when interpreting statutes effecting tribal sovereignty, that the statutes be interpreted to interfere as little as possible with tribal sovereignty, suggesting that the tribal sovereignty issues at play in this case were not present in *Marcyes.*

of his computer and electronic devices. 806 F.3d at 1013. In dicta, the court noted that the defendant was charged in federal court because the Assimilative Crimes Act applies to Indian country, and cited to *Marcyes* and *United States v. Kaufman,* 862 F.2d 236, 237-238 (9th Cir. 1988), *both of which* rely on *Williams* in their assertions regarding the applicability of the Assimilative Crimes Act to Indian country. 806 F.3d at 1017.

In *Acunia,* the issue of the Assimilative Crimes Act's application to Indian country was never raised. Rather, the court wrote to address whether the "Indian on Indian" exception to the Indian Country Crimes Act precluded prosecution for an act of incest between two Indians. 404 F.2d at 141. In dicta, the court incorrectly opined that the *Williams* Court held that the "Assimilative Crimes Act is among the general laws which the first paragraph of section 1152 [the ICCA] extends to Indian territory . . ." *Id.* at 142.

In *Pino,* the court wrote to address the "trial court's refusing to give a lesser-included-offense instruction in rejecting certain psychiatric testimony offered by [the defendant]." 606 F.2d at 910. In the single sentence in which the court discussed jurisdictional issues within the Assimilative Crimes Act, the court cited directly to *Williams, Acunia* (which relied on *Williams*), and *United States v. Sosseur,* 181 F.2d 873 (7th Cir. 1950), which once again, relies on *Williams.* 606 F.2d at 915.

In summary, the cases the government relies on for their assertion that the Assimilative Crimes Act applies to Indian country are cases that rely on *Williams*. *Williams* never addressed the jurisdictional issues raised in this case, but assumed jurisdiction for purposes of addressing a separate issue. Cases that assume a legal principle carry no precedential value. In *Nat'l Aeronautics & Space Admin v. Nelson,* 562 U.S. 134 (2011), Justice Scalia discussed the role of *stare decicis* for cases like *Williams. Id.* at 163 (Scalia, J., concurring). When a court assumes a legal principle, "there *is* no rule of law that is settled." *Id.* "A further reason [cases that assume legal principles] are not entitled to *stare decisis* effect is" that such opinions do not "suppl[y] any coherent reason" for why a legal principle may or may not be valid. *Id.* at 164. This Court should not treat *Williams* and its progeny as sufficient to support a conclusion that the Assimilative Crimes Act is applicable to Indian country, particularly when courts are instructed not to intrude upon tribal sovereignty absent unambiguously clear language from Congress authorizing such intrusions.

    **2.    Post-*Williams* case law provides controlling authority establishing that the federal government lacks jurisdiction to prosecute Indians for non-major crimes committed in Indian country under state law.**

Controlling precedent regarding the applicable legal principles and rules of statutory construction demonstrate that *Williams* and its progeny do not establish that the Assimilative Crimes Act is one of the "general laws" applicable to Indian

Country through the Indian Country Crimes Act. In *Bryan v. Itasca County, Minnesota,* 426 U.S. 373 (1976), the Court wrote to address whether the State of Minnesota could impose a personal property tax on the sale of a mobile home on tribal land. The question presented to the Court was whether a statute applying the "civil laws . . . of general application to private persons or property" to Indian country swept in state tax laws. *Id.* at 378. This question is virtually identical to the question presented to this Court – whether the term "the general laws of the United States" contained in the Indian Country Crimes Act makes the Assimilative Crimes Act applicable to Indians in Indian country. The *Bryan* Court held that the term "civil laws . . . of general application" did *not* make state tax laws applicable to Indian country. *Id.* at 375.

In so holding, the Court noted that, in various other statutes, Congress had used express language when their intent was to subject native lands to state laws. *Id.* at 389. The express language contained in other statutes was "cogent proof that Congress knew well how to express its intent directly when that intent was to subject reservation Indians to the full sweep of state laws . . ." *Id.* If *Williams* actually stood for the proposition that "the general laws of the United States" makes Indians in Indian country subject to state criminal law through the Assimilative Crimes Act, it would be irreconcilable with the *Bryan* Court's determination that the phrase "civil

8

laws . . . of general application" did not include tax laws because the language was not sufficiently express and clear to warrant an intrusion into tribal sovereignty, and would transform tribes into "little more than private, voluntary organizations." *Id.* (internal quotations and citations omitted).

Likewise, case law subsequent to this Court's opinion in *Marcyes* also suggests that this Court did not consider the footnote addressing an amicus argument in *Marcyes* (and relying on *Williams* in doing so), controlling when addressing a question remarkably similar to the one at issue before the Court now. In *Couer D'Alene Tribe of Idaho v. Hammond,* 384 F.3d 674 (9th Cir. 2004), the government argued that a statute which allowed states to impose taxes on gasoline sold on "United States military or other reservations" allowed the State of Idaho to tax gasoline sales in Indian country. *Id.* at 693. The language, "other reservations" is broader than the language in 18 U.S.C. § 7 describing "lands reserved or acquired for the use of the United States" that the government asserts includes Indian country as "decided" by cases like *Marcyes.* Resp. Br. at 14. Yet, this Court held in *Couer D'Alene* that it would be a "leap" to assume that Congress meant "United States military or other reservations to apply to Indian reservations without stating so specifically[.]"384 F.3d at 695.

In summary, *Williams* and its progeny like *Marcyes,* cannot serve as precedent in this case, because later cases addressing nearly identical issues provide controlling reasoning that, when applied to the present case, foreclose federal jurisdiction over Indians accused of a state crime committed in Indian country that does not qualify as any of the enumerated crimes over which federal jurisdiction is expressly conferred under the Major Crimes Act.

**C.     The Cases Upon Which The Government Relies Illustrate That The Assimilative Crimes Act Was Inappropriately Applied To Mr. Smith.**

While the cases the government relies on do not settle the broader question of whether the Assimilative Crimes Act applies to Indian country in general, they do usefully demonstrate why the Assimilative Crimes Act does not apply in this case.

The Assimilative Crimes Act was enacted to ensure that crimes committed on federal enclaves would not go entirely unpunished because no other sovereign had any jurisdiction to punish offenses in those areas. 40 Annals of Cong. 929 (1823); 41 Annals of Cong. 528 (1824). The Indian Country Crimes Act, through which the government asserts the Assimilative Crimes Act is applied to Indian country, was intended to insure that *non-Indians* could be punished for crimes in Indian country: "The primary need filled by the [ICCA] was that of a body of law to punish non-Indian crime." Hon. William C. Canby, Jr., *American Indian Law in a Nutshell* (6th ed. 2014) at 176. Taken together, the Indian Country Crimes Act and Assimilative

Crimes Act were not intended to apply to Indians, and certainly were not intended to apply where tribal law already prohibits the conduct charged in federal court, and thus, there is no "gap-filling" role for the Assimilative Crimes Act to play. Cases cited by the government illustrate this point.

In *Williams*, the Court addressed a case in which a *non-Indian* entered onto the Colorado River Indian Reservation in Arizona and had sex with a minor Indian female. 327 U.S. at 713. As the Court noted, the laws of Arizona did not apply to a non-Indian male committing a crime against an Indian female. *Id.* at 714. Moreover, because the defendant was not an Indian, to the extent there was a tribal code prohibiting sex with minor females, it would not have applied to the defendant either. Thus, without the Assimilative Crimes Act to fill the gaps in criminal jurisdiction, the defendant would have committed a crime "with impunity on [a] federal enclave[]simply by crossing jurisdictional lines." *United States v. Mariea,* 795 F.2d 1094, 1099 (1st Cir. 1986).

In *Bare*, the defendant, a *non-Indian,* committed the crime of felon in possession of a firearm in Indian country. 806 F.3d at 1013. As the court noted, had the defendant's conduct occurred somewhere within the state of Arizona other than an Indian reservation, Arizona law would have applied. *Id.* at 1016. However, "[b]ecause Bare, a non-Indian, discharged a firearm over the head of an Indian while

on the Navajo Reservation, he is subject to punishment in Indian country . . . under the ACA." *Id.* at 1016-1017. Again, the Assimilative Crimes Act was applied to a non-Indian, because, without the Assimilative Crimes Act, the defendant could have committed his crimes with impunity.

In *United States v. Billadeau,* 275 F.3d 692 (8th Cir. 2001), a *non-Indian* was prosecuted for resisting a federal officer in Indian country. The court noted that the Indian Country Crimes Act "creates federal jurisdiction over crimes committed by non-Indians against Indians in Indian country." *Id.* at 694.

In *United States v. McMillan,* 820 F.2d 251 (8th Cir. 1987), "McMillan, a non-Indian" was involved in a "motor vehicle accident in which Faith Ghost Bear, an Indian, was killed . . . on the Pine Ridge Indian reservation." *Id* at 253. Again, the Assimilative Crimes Act was applied to ensure that a non-Indian could be punished for crimes committed on a reservation where the state lacked jurisdiction, and where because the defendant was not a tribal member, the tribe lacked jurisdiction as well.

These cases are illustrative of two points. First, the Assimilative Crimes Act only has a role to play in cases in which there is a gap in law to fill. In this case, there was no gap, because Mr. Smith could have been prosecuted in tribal court for the exact same conduct the government prosecuted him for in federal court. *See* Warm Springs Tribal Code § 310.520 (making it a crime for a person to flee the police in a

motor vehicle after being given a signal to stop). Second, to the extent the government cites these cases to encourage this Court to authorize an intrusion into tribal sovereignty, the cases are unpersuasive because the cases did not involve Indian defendants, and therefore did not involve canons of statutory construction requiring courts to interpret statutes effecting Indian sovereignty in favor of Indians. As this Court has stated, "'the standard principles of statutory construction do not have their usual force in cases involving Indian law.'" *EEOC v. Karuk Tribe Hous. Auth.,* 260 F.3d 1071, 1082 (9th Cir.2001) (quoting *Montana v. Blackfeet Tribe of Indians,* 471 U.S. 759, 766 (1985)). Rather, because of the unique trust relationship between the United States and Indian tribes, ambiguous provisions in both treaty and non-treaty matters should be "construed liberally" in favor of the Indians. *County of Oneida v. Oneida Indian Nation,* 470 U.S. 226, 247 (1985). Or, to quote the Supreme Court in *Ex Parte Crow Dog,* another case the government relies on (Gov. Resp. at 11), intrusions into tribal sovereignty should not be based on "argument and inference," but on "a clear expression of the intention of Congress." 109 U.S. 506, 571 (1883). No such clear expression is found in Assimilative Crimes Act or anywhere else.

**D.** **Applying the Assimilative Crimes Act to an Indian Defendant in Indian Country Does Not "Honor Native Sovereign Rights," But Rather Gives Short Shrift To Native American Tribal Sovereignty.**

In its response, the government asserts that the Assimilative Crimes Act, in conjunction with other statutes, "is designed to honor Native sovereign rights[.]" Gov. Resp. at 4. Nothing could be further from the truth. By subjecting Native Americans to federal prosecution under the Assimilative Crimes Act for state crimes, federal prosecutors are allowed to "pick and choose to prosecute for harsher penalties or under easier burdens of proof as though playing with a person's freedom is nothing more than a strategic game." Brief of Amicus Curiae at 8. The only amicus brief in this case comes from the Southwest Indian Law Clinic, a Native American rights organization that urges this Court *not* to allow the broad intrusion into tribal sovereignty the government asks this Court to make.

The government is attempting to intrude into an area in which the Confederated Tribes of Warm Springs are abundantly capable of regulating their own criminal matters. "[C]ourts will not lightly assume Congress in fact intends to undermine Indian self-Government." *Michigan v. Bay Mills Indian Cmty.* 134 S. Ct. 2024, 2031 (2014). But that is exactly what happens when federal authorities convict an Indian of a non-major state crime committed in Indian country. In its brief, the government does not even acknowledge the deeply rooted practice of interpreting

statutes narrowly so as to not interfere with tribal sovereignty. The government's intrusion disrespects, rather than "honors," the sovereign interests of the Confederated Tribes of Warm Springs and all other Indian tribes.

**Conclusion.**

For all of the foregoing reasons, and those set forth in his opening brief, Mr. Smith respectfully requests that this Court reverse the judgment of conviction against him and remand to the district court with instructions to dismiss the indictment.

Respectfully submitted this 26th day of April, 2018.

 */s/ Conor Huseby*
Conor Huseby
Attorney for Defendant-Appellant

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **CA No. 17-30248** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JOHNNY ELLERY SMITH,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |

_____

**CERTIFICATE OF COMPLIANCE**

_____

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 3,348 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has

been prepared in a proportionally spaced typeface using Word 2013, 14-point Times New Roman font.

Dated this 26th day of April, 2018.

*/s/ Conor Huseby*
Conor Huseby, Attorney for Defendant-Appellant

**CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2018, I electronically filed the foregoing Reply Brief of Appellant with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Tammy Reynolds*
Tammy Reynolds